**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| V.A.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SAN PASQUAL VALLEY UNIFIED SCHOOL DISTRICT, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 17-cv-02471-BAS-AGS<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**AND**<br><br>**ORDERING DEFENDANTS TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**<br><br>**[ECF No. 3]** |

　　　Presently before the Court is Plaintiff V.A.'s Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction to enjoin Defendants San Pasqual Valley Unified School District, Board Of Trustees Of The San Pasqual Valley Unified School District, Monica Montague, Bernadine Swift Arrow, Rebecca Ramirez, Sally Ann Decorse, Lisa Aguerro, Rauna Fox, and Darrell Pechtl (collectively, "Defendants") from enforcing a school district policy related to kneeling during the national anthem. Defendants informally objected to the motion

through an email sent to the Court and Plaintiff's counsel on December 12, 2017. For the reasons stated below, the Court **GRANTS** Plaintiff's motion for a TRO, and sets the case for a hearing on whether a preliminary injunction should be issued.

## I.     BACKGROUND

Plaintiff is a high school senior at San Pasquel Valley High School ("School"), who plays on the School's varsity sports teams. (V.A. Decl. ¶¶ 2, 5-6.) The School is a public school in the San Pasquel Valley Unified School District ("District"). (Verdin Decl. ¶ 2.) At two games during the recent football season, Plaintiff kneeled during the national anthem to express a reminder that "racial injustice in our country" exists, "which we must not tolerate." (V.A. Decl. ¶ 8, 9, 15.)

At issue in this case is the District's policy created in the days following an incident after one of the high school football games where Plaintiff chose to kneel during the national anthem. After an away game, a few students from the opposing high school made racial slurs and threats directed at the School's students. (Adina A. Decl. ¶¶ 16-18, 21.) Following that incident, the District announced a new policy that stated:

> Students and coaches shall stand and remove hats/helmets and remain standing during the playing or singing of the national anthem. Kneeling, sitting or similar forms of political protest are not permitted during athletic events at any home or away games. Violations may result in removal from the team and subsequent teams during the school year.

(Verdin Decl. ¶ 3, Ex. 1.)

The next basketball games will be held today (an away game) and on December 15, 2017 (a home game). (V.A. Decl. ¶ 38.) Plaintiff expresses a desire to kneel during the national anthem at those games, as well as any other upcoming games. (*Id.* ¶¶ 32, 38-39; Verdin Decl. ¶ 10.)

## II. STANDARD

The standard for a TRO and preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)). A TRO's "underlying purpose [is to] preserv[e] the status quo and prevent[] irreparable harm" until a preliminary injunction can be held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Under Federal Rule of Civil Procedure 65(b), a court may grant a TRO:

> without written or oral notice to the adverse party . . . only if (1) it clearly appears . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

These stringent requirements are imposed because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc.*, 415 U.S. at 439. When granting a TRO without an opportunity for the opposing party to respond, the court can consider whether time is a pressing factor, as well as craft an order with a narrow scope and limited duration to justify the lack of notice. *Cf. Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984) (finding time was not pressing and, thus, a TRO without notice was not necessary); *see In*

*the Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979) (stating that petitioner's justification was sufficient to support an order "narrow in scope and brief in its duration").

Under Federal Rule of Civil Procedure Rule 65(c), a TRO may only be granted if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (internal quotation omitted). Thus, if the court finds that "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," the court may dispense of the requirement of filing a bond. *Id.*

### III. DISCUSSION

The Court grants this TRO without hearing formal oral or written opposition from Defendants. The Court finds that this is necessary given the pressing time factor because Plaintiff intends to kneel during the national anthem at the School's basketball games tonight and in three days. If the TRO is not granted, Plaintiff will be irreparably harmed. The Court also only enforces this TRO until the preliminary injunction hearing, which is scheduled in seven days, and by that time, Defendants will have an opportunity to object both in writing and in person. *See Granny Goose Foods, Inc.*, 415 U.S. at 438-39 ("[U]nder federal law [*ex parte* TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."). Additionally, the scope of this TRO is very narrow as it only suspends the enforcement of the District's policy for actions during the national anthem played at athletic events. *Id.* It is likely that the national anthem is played only a few times at the District's athletic events over the next week. The Court notes that, in an email sent to the Court today, Defendants' counsel stated that the national anthem is not

played at any basketball games and that the District's policy was tabled. Without providing any supporting evidence and considering Defendants' counsel's October 28, 2017 letter to the contrary (Verdin Decl. at Ex. 4), the Court finds that these representations are insufficient to warrant denying the TRO.

Additionally, Defendants had advance notice of the TRO motion, and, after reviewing the filed TRO motion papers, chose not to respond until after Plaintiff requires relief. Plaintiff's counsel certifies that she sent a letter to Defendants and Defendants' counsel on December 7, 2017 stating that Plaintiff would be filing this motion and requesting a response the next day, which she did not receive. (Verdin Decl. ¶ 11). Plaintiff's counsel also certifies that she and Defendants have been in contact several times over the past two months on this matter. (*Id.* ¶ 4-8.) Plaintiff's counsel also certified that Plaintiff advised her that he plans to kneel at the basketball game on December 15, 2017. (*Id.* ¶ 10.) Earlier today, Defendants' counsel emailed the Court and Plaintiff's counsel to state that he was out-of-state (having left the day after Plaintiff's counsel sent him notice of this impending TRO motion), had reviewed the briefing, and would respond formally on Monday, December 18, or as this Court orders. No other formal requests or objections were made. This communication demonstrates to the Court that Defendants are on notice of the TRO motion, including the request for immediate relief given the upcoming basketball games, and chose to formally object only after Plaintiff would be irreparably harmed. *Cf. Vargas v. GB Inland Properties LLC*, 2014 WL 12586241 (denying TRO when Plaintiff failed to "detail[] any specific facts showing that he will be irreparably harmed, absent a TRO, before Defendants can be heard in opposition"). Given this, the Court finds that issuing a TRO of limited scope and duration without hearing formal objections from Defendants is warranted.

Turning to the merits of the TRO, the Court finds that Plaintiff has satisfied the four prong test. *See Am. Trucking Ass'ns Inc.*, 559 F.3d at 1052; *see also Klein v. City of San Clemente,* 584 F.3d 1196, 1208 (9th Cir. 2009) ("[C]aselaw clearly favors

granting preliminary injunctions to a plaintiff . . . who is likely to succeed on the merits of his First Amendment claim.").

Based on the papers filed by Plaintiff, and without the benefit of an opposition, at this stage of the proceedings, the Court finds that Plaintiff is likely to succeed on the merits. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624. 633, 642 ("[T]he action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.").

Second, Plaintiff is likely to suffer irreparable harm because of the violation of his First Amendment rights. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Doe v. Harris*, 772 F.3d 563, 583 ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of [injunctive] relief." (internal quotations and citations omitted)).

Lastly, the balance of equities and public interest tips in favor of granting the TRO. Defendants likely do not risk much harm because, when Plaintiff first kneeled at a game, he did so peacefully and without incident. (V.A. Decl. ¶¶ 12-14.) This risk of harm appears minimal when compared to Plaintiff's harm to his First Amendment rights. Additionally, the Ninth Circuit "consistently recognize[s] the significant public interest in upholding free speech principles." *Klein*, 584 F.3d at 1208 (finding "balance of equities and the public interest thus tip sharply in favor of enjoining").

The Court also dispenses the requirement for a bond at this time because it does not appear that the TRO is likely to harm Defendants. *See Gorbach v. Reno,* 219 F.3d 1087, 1092 (9th Cir. 2000) (finding no evidence that defendants would suffer damages from a preliminary injunction); *IBiz, LLC v. City of Hayward*, 962 F. Supp.

2d 1159, 1171 (N.D. Cal. 2013) (holding that no bond is required when considering First Amendment claims).

## IV. CONCLUSION

For the reasons stated below, the Court **GRANTS** Plaintiff's motion for a TRO and **ORDERS** Defendants to show cause as to why the Court should not grant Plaintiff's motion for a preliminary injunction.

Accordingly, the Court**:**

(1) **ENJOINS** Defendants, serving in their official capacities, and the District's officers, agents, and employees, from enforcing the San Pasqual Valley Unified School District's policy on actions during the national anthem as stated in its October 11 and 12, 2017 letters from Superintendent Rauna Fox, or any other similar policy that would:

    (a) restrict Plaintiff or other students from kneeling or sitting during the playing or singing of the national anthem at athletic events; or

    (b) require any action from Plaintiff or other students, such as standing, during the playing or singing of the national anthem at athletic events;

effective immediately through December 19, 2017;

(2) **ORDERS** Plaintiff to serve Defendants with this Order as soon as practical, but **no later than 12:00 p.m. on Wednesday, December 13, 2017**;

(3) **ORDERS** Defendants to respond to Plaintiff's Motion for Preliminary Injunction **no later than 12:00 p.m. on Monday, December 18, 2017**; and

(4) **ORDERS** the parties to appear on **Tuesday, December 19, 2017**, at **2:00 p.m.** in Courtroom 4B for oral argument. *See* Civ. L.R. 7.1(d)(1). The parties should be prepared to discuss Plaintiff's Motion for Preliminary Injunction (ECF No. 3).

**IT IS SO ORDERED.**

DATED: December 12, 2017

Hon. Cynthia Bashant
United States District Judge