# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.A., <br><br>                 Plaintiff, <br><br>     v. <br><br>SAN PASQUAL VALLEY UNIFIED SCHOOL DISTRICT, *et al.*, <br><br>                 Defendants. | Case No. 17-cv-02471-BAS-AGS <br><br>**ORDER GRANTING MOTION FOR ATTORNEY FEES** <br><br>**[ECF No. 31]** |

Presently before the Court is Plaintiff V.A.'s request for attorney fees to be reimbursed by Defendants San Pasqual Valley Unified School District, Board Of Trustees Of The San Pasqual Valley Unified School District, Monica Montague, Bernadine Swift Arrow, Rebecca Ramirez, Sally Ann Decorse, Lisa Aguerro, Rauna Fox, and Darrell Pechtl (collectively, "Defendants"). (ECF No. 31, "Mot.") Plaintiff brings his request under 28 U.S.C. § 1988 and in the amount of $193,993.00 in attorney fees and $1,265.48 in costs, a total of $195,258.48. (ECF No. 31 at 1.) Defendants oppose the motion, arguing first that Plaintiff only nominally prevailed

in this action, and second, that Plaintiff's attorney fee request is unreasonable. (ECF No. 34, "Opp'n.") For the reasons stated below, the Court **GRANTS** Plaintiff's motion for attorney fees and costs.

I. BACKGROUND

On December 8, 2017, Plaintiff commenced this action seeking injunctive relief from San Pasquel Valley Unified School District's ("District") policy regarding kneeling during the National Anthem. (*See* ECF No. 3.) Plaintiff is a high school senior at San Pasquel Valley High School ("School"), who played on the School's varsity sports teams. (*Id.*) The School is a public school in the District. (*Id.*) The policy at issue in this case arose after an incident during an away football game after Plaintiff kneeled during the national anthem. (*Id.*) Plaintiff had kneeled at games before without issue and was doing so to express a reminder that "racial injustice in our country" exists, "which we must not tolerate." (Declaration of V.A., ECF No. 3-2; ECF No. 3.) Plaintiff sought injunctive relief to prevent the District from enforcing its new policy so that he could express himself during the following sports season. (ECF No. 3.)

On December 12, 2017, the Court granted a temporary restraining order ("TRO"), enjoining Defendants from enforcing the policy relating to the National Anthem protests. (ECF No. 6.) Following the preliminary injunction ("PI") hearing, the Court granted the PI on December 21, 2017. (ECF No. 15.)

The parties proceeded with litigating this case, including engaging in informal settlement discussions and filing a joint discovery plan on February 9, 2018. (*See* Mot. at 2-3; ECF No. 21.) An early neutral evaluation conference ("ENE") was held with Magistrate Judge Andrew Schopler on February 27, 2018, and a settlement conference was held on April 3, 2018. (ECF Nos. 22, 26.) The parties settled this case pursuant to various terms, and the Court confirmed the minor's compromise on May 25, 2018. (ECF No. 26, 30.)

## II. ANALYSIS

For a civil rights violation action, the prevailing party may seek to recover attorney fees and costs. *See* 28 U.S.C. § 1988. "Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987). It allows a district court "in its discretion" to award "the prevailing party . . . a reasonable attorney's fee as part of the costs." *Id.* "The court's discretion under section 1988 has been interpreted very narrowly." *Ackerley Commc'ns, Inc. v. City of Salem, Or.*, 752 F.2d 1394, 1396 (9th Cir. 1985). Even so, "fee awards should be the rule rather than the exception." *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1251 (9th Cir. 1981). And "a prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Ackerley*, 752 F.2d at 1396 (citing *Newman v. Piggie Park Enterprises Inc.*, 390 U.S. 400, 402 (1968)).

Defendants oppose Plaintiff's request for attorney fees. Defendants contend that Plaintiff's success was "nominal at best," and, if the Court finds otherwise, Plaintiff's request is unreasonable and should not be awarded at the full amount requested. (Opp'n at 9, 11.) Based on the following reasons, the Court finds that Plaintiff was the prevailing party and that the request for attorney fees is reasonable.

### A. Plaintiff was the Prevailing Party and Is Entitled to Fees.

Neither party disputes that Plaintiff was the prevailing party. (*See* Opp'n at 9.) Plaintiff obtained what he sought—to stop the District from enforcing its policy regarding kneeling during the National Anthem. Plaintiff obtained this relief first from the Court through a TRO and PI, and then as a part of the parties' settlement. Defendant does argue that, even though Plaintiff prevailed, "Plaintiff obtained very little as a result of filing litigation." (Opp'n at 9.)

A party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior," benefiting that party. *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). The Ninth Circuit has regularly held that a plaintiff winning a preliminary injunction is the prevailing party. *See Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716–17 (9th Cir. 2013) (collecting cases).

The Court agrees that Plaintiff is the prevailing party, and that he is entitled to attorney fees in this case. *See Hensly v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). Through this case, Plaintiff obtained a settlement to permanently prevent the District from enforcing a policy prohibiting him and other students from kneeling and engaging in other expressive actions during the National Anthem. The Court also awarded Plaintiff similar injunctive relief through a TRO and a PI at the onset of this action, making him the prevailing party. *See Higher Taste, Inc.*, 717 F.3d at 716–17. The Court finds that awarding Plaintiff attorney fees in this case is just, and that no special circumstances requiring otherwise exist. *See Teitelbaum v. Sorenson*, 648 F.2d 1248, 1251 (9th Cir. 1981) ("[F]ee awards should be the rule rather than the exception.").

### B. Plaintiff's Request for Fees and Costs is Reasonable.

The Court must now determine whether the fees and costs requested by Plaintiff are reasonable. Under section 1988, reasonable attorney fees must be "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Thus, awarding adequate fees is an important part of section 1988's purpose "to ensure that federal rights are adequately enforced." *Id.* at 550. Defendants contest that Plaintiff's fee request is reasonable because the hourly rates and number of hours claimed in this case are unreasonably high. (Opp'n at 11-20.) The Court disagrees.

– 4 –

17cv2471

A district court should apply the "lodestar" method to determine reasonable attorney fees. *See Kelly v. Wengler*, 822 F3d 1085, 1099 (9th Cir. 2016). Under the lodestar method's two-step process, a court first "calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Id.* The "reasonably hourly rate" is typically the "prevailing market rate[] in the relevant community." *Perdue*, 559 U.S. at 551 (stating that the lodestar figure "roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case"). Typically, the lodestar is the reasonable fee amount, though an enhancement may then be applied to increase or decrease the lodestar.[1] *See id.* at 554; *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Generally, the court should defer to the winning lawyer's professional judgment as to how much time was required for the case. *See Costa v. Comm'r of Social Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012); *Moreno*, 534 F.3d at 1112 ("[A]fter all he [or she] won, and might not have, had he [or she] been more of a slacker."). Although surveying hourly rates awarded to attorneys of comparable experience and skill can be a useful tool, "it is far less useful for assessing how much time an attorney can reasonably spend on a specific case because that determination will always depend on case-specific factors including, among others, the complexity of the legal issues, the procedural history, the size of the record and when counsel was retained." *Costa*, 690 F.3d at 1136. If the government disputes the reasonableness of the fee, then it "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

---

[1] Plaintiff does not request an enhancement, and therefore the Court does not address this issue.

This case involved sensitive constitutional law issues, necessitated an accelerated schedule for the injunctive relief requests, and required prolonged litigation until settlement. Plaintiff submits the Declarations of Ira Gottlieb and Franchesca Verdin, which details theirs and their colleagues' legal education and experience, including various specific cases involving civil rights violations. (*See, e.g.*, ECF No. 31-2 (detailing over thirty-five years of personal experience and that Plaintiff's attorneys' firm has "historically been involved in civil rights anti-discrimination class actions"); ECF No. 31-4 (explaining that she regularly represents low-income students of color and other vulnerable student groups in a variety of education related issues, including those involved in this case).) Mr. Gottlieb also discusses the risks associated with taking on this case for his firm, states that the representation was taken on a contingency fee basis, and discusses the specific legal issues and litigation tasks addressed. (*Id.* at 10-12.) Both declarations also discuss the "unreasonableness" of the District to settle this manner, causing litigation costs to increase. (*Id.* at 12-13; *see also* ECF No. 31-4 at 9-13; ECF No. 33-2 at 6-7.)

First, the Court reviews the amount of hours requested for the fee award. Mr. Gottlieb's and Ms. Verdin's declarations detail the hours expended on the case (calculated to one-tenth of an hour), dates for when the work was completed, and descriptions of the work performed. (ECF No. 31-2 at Ex. 3; No. 31-4 at Ex. 2.) Counsel documents the exact hours spent preparing and drafting an initial complaint, researching constitutional law relating to "First Amendment suppression," briefing motions for a TRO and PI, analyzing an opposition brief, preparing and attending in-court oral argument for the PI, and other various tasks, all which included consulting with co-counsel and/or Plaintiff. (ECF No. 31-2 at Ex. 3; ECF No. 31-4 at Ex. 2.) Additionally, the Court recognizes that all of the above actions occurred on a condensed schedule for injunctive relief. *See The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 704–05 (6th Cir. 2016) ("Given the extremely expedited pace in the few short months . . . the need for multiple attorneys to handle the various legal

and factual facets of the [case] is obvious."). Following the preliminary injunction, Plaintiff's counsel continued to document their billable hours as the parties engaged in early settlement discussions to settle the matter. (ECF No. 31-2 at Ex. 3; ECF No. 31-4 at Ex. 2.) When the parties did not settle, counsel spent additional hours drafting discovery papers and preparing for and attending an ENE. (*Id.*) Once settlement discussions resumed, counsel went on to expend even more time drafting the final settlement papers, attending the settlement conference, and drafting this instant motion for attorney fees. (ECF No. 31-2 at Ex. 3; ECF No. 31-4 at Ex. 2.) *See Zoerb v. Nat'l Collegiate Student Loan Trust 2006-3¸* No. 14-cv-468-BAS-KSC, 2017 WL 1322102, at *2 (S.D. Cal. April 5, 2017) (awarding $125,000 in attorney fees even though "the litigated issues were not novel or difficult" because the issues "did require much negotiation by the attorneys").

The declarations also explain the discounts represented in Plaintiff's fees request, which includes elimination of the associates' hours expended after the preliminary injunction order was issued, two attorneys' time altogether, travel time, any time that "appeared to be duplicative," and other "excessive" time. (ECF No. 31-2 at 12-13; ECF No. 33-1 at 4, Ex. A (totaling the number of hours cut by Bush Gottlieb to 169.1 hours and including a detailed spreadsheet of these reductions); No. 31-4 at 13-14 ("The total hours claimed [by the attorneys at the California Rural Legal Assistance, Inc.] reflect more than a 25% reduction in the actual time and fees expended by CRLA on this matter."); ECF No. 33-2 at Ex. 1 (providing a comprehensive breakdown of the hours reduction, which amounted to 212.8 hours).) These reductions largely seek to avoid any duplicative work, especially during the initial discovery period and settlement discussions that proceeded the preliminary injunction order.

Additionally, the Court considers the results obtained as a "factor [that] is particularly crucial where a plaintiff is deemed 'prevailing.'" *Atkins v. Apfel*, 154 F.3d 986, 989–80 (9th Cir. 1998) (quoting *Hensley*, 461 U.S. at 434); *see Dang v.*

*Cross*, 422 F.3d 800, 814 (9th Cir. 2005). Thus, Plaintiff's success in ultimately obtaining a settlement to prevent the District's policy from being enacted supports the Court finding the number of hours expended is reasonable. *See Afanador*, 809 F. Supp. at 64. Given the various stages of litigation in this case that occurred over a matters of months—despite Plaintiff's efforts to settle—and the hour reductions, the Court finds that the amount of hours requested is reasonable.

Second, the Court analyzes that the requested hourly rates for each attorney. "'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Courts may take into consideration "the experience, skill, and reputation of the attorney." *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 902–03 (9th Cir. 1995). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n. 11. Plaintiff's requested rates range from $325.00 to $650.00 per hour, and these rate variations are based on years of experience for each attorney. (*See* ECF No. 31 at 10.) For example, the $325.00 per hour rate is requested for an associate who has been practicing for over three years, and the $650.00 rate is for two attorneys with over thirty-five years of experience each. (ECF No. 31 at 10.) Plaintiff's declarations detail the experience of each of his attorneys. (ECF Nos. 31-2, 31-4.) And Plaintiff provided additional declarations that verify that the requested hourly rates are in line with the San Diego market, including a declaration from an attorney whose practice involves attorney fees litigation and expertise. (ECF Nos. 31-3, 31-5.) Additionally, the Court recognizes that other recent cases have found similar rates to be reasonable in San Diego. *See, e.g.*, *Makaff v. Trump Univ.*, No. 10cv0940 GPC (WVG), 2015 WL 1579000, at *4 (S.D. Cal. 2015) (finding "hourly rates ranging from $250 to $440 for

associates, and $600 to $825 for partners" was reasonable). In light of the prevailing rate in San Diego and the experience of Plaintiff's attorneys, the Court finds the requested rates to be reasonable.

As for Plaintiff's request for costs, section 1988 authorizes an award of not only attorneys' fees, but also "other expenses." 42 U.S.C. § 1988. Plaintiff seeks $1,265.48 in costs, including court filing fees, a court reporter, and various printing costs. (*See* ECF No. 31-2 at Ex. 3.) This amount is reasonable and recoverable. *See Dang*, 422 F.3d at 814 ("Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." (internal quotations omitted)). Thus, the Court grants Plaintiff's request.

### III. CONCLUSION

In light of the foregoing, the Court finds Plaintiff, as the prevailing party, is entitled to attorney fees and costs in this case and that the requested fees and costs are reasonable. Therefore, the Court **GRANTS** Plaintiff's Motion for Attorney Fees and Costs (ECF No. 31) and awards Plaintiff attorney fees in the amount of $193,993.00 in attorney fees and $1,265.48 in costs, a total of $195,258.48.

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

DATED: August 17, 2018

Hon. Cynthia Bashant
United States District Judge